436 So.2d 932 (1983)
FLORIDA PATIENTS COMPENSATION FUND, Appellant,
v.
Saul MILLER, M.D., and Mt. Sinai Hospital of Greater Miami, Inc., Appellees.
No. 81-87.
District Court of Appeal of Florida, Third District.
June 28, 1983.
Rehearing Denied September 19, 1983.
Holland & Knight and Julian Clarkson, Tampa, for appellant.
Blackwell, Walker, Gray, Powers, Flick, Hoehl, and James C. Blecke, Adams & Ward, Richard Adams, Miami, for appellee.
Before DANIEL S. PEARSON, FERGUSON and JORGENSON, JJ.
JORGENSON, Judge.
The trial court, at the hearing on the indemnification claim of Mt. Sinai Hospital, entered an order which, in pertinent part, reads:
THIS CAUSE came on to be heard before the undersigned Judge after due notice for final hearing on the claim of MT. SINAI HOSPITAL OF GREATER MIAMI, INC. that it had a right of common law indemnity against the defendants, SAUL MILLER, M.D. and the FLORIDA PATIENTS COMPENSATION FUND as his carrier. All of the parties to the proceeding stipulated that there was no issue of fact to be determined regarding the liability on the common law indemnity claim. The only issue of fact was the question of the amount of *933 reasonable fee to be awarded to Adams and Ward as attorneys for MT. SINAI HOSPITAL OF GREATER MIAMI, INC. as a part of MT. SINAI's common law indemnity claim against SAUL MILLER, M.D. and the FLORIDA PATIENTS COMPENSATION FUND.
All parties concede that MT. SINAI HOSPITAL OF GREATER MIAMI, INC. had a right of common law indemnity against SAUL MILLER, M.D. by reason of the verdict and judgment that had been entered in this cause in favor of the plaintiffs. It was admitted that SAUL MILLER, M.D. was a member of the FLORIDA PATIENTS COMPENSATION FUND. FLORIDA PATIENTS COMPENSATION FUND admitted that it was responsible to pay on behalf of SAUL MILLER, M.D. the $100,000 that MT. SINAI had paid in accordance with the final judgment entered in favor of the plaintiffs in this cause because of the fact that SAUL MILLER, M.D.'s liability under Chapter 768.54(2)(b) was limited to $100,000 and he had paid that amount to the plaintiffs. The only issue left for determination was whether or not the FLORIDA PATIENTS COMPENSATION FUND was also obligated on behalf of SAUL MILLER, M.D. to pay the balance of MT. SINAI's indemnity damage claim which consisted of costs and expenses incurred by MT. SINAI in defense of this suit, the portion of the cost judgment that was awarded against MT. SINAI on behalf of the plaintiff, REYES, and the reasonable attorney's fees which have been agreed to be paid by MT. SINAI to its attorneys, Adams and Ward. All of the parties agree that this was a legal issue and should be determined by the court.
It has been many times decided that attorney's fees and costs are a part of the damages sustained by an indemnitee for which an indemnitor is responsible. It is the opinion of the court that under the provisions of Chapter 768.54, Fla. Stat., the FLORIDA PATIENTS COMPENSATION FUND is obligated to pay on behalf of SAUL MILLER, M.D. all damage awards rendered against SAUL MILLER, M.D. in excess of $100,000 that arise out of the rendering of medical care or services by SAUL MILLER, M.D. In this case, the claim of MT. SINAI HOSPITAL OF GREATER MIAMI, INC. against SAUL MILLER, M.D. for common law indemnity has arisen out of the rendition of medical care and service by SAUL MILLER, M.D.
Thereafter, the trial court found that Mt. Sinai Hospital had established a right of common law indemnity against Saul Miller, M.D. and that, due to the fact that Dr. Miller had met his statutory obligation under the provisions of Section 768.54, Florida Statutes (1979), the Florida Patient's Compensation Fund was liable. We agree and affirm.
The trial court's conclusion that an indemnitee is entitled to recover reasonable attorney's fees as a part of its damages is buttressed by a substantial body of Florida law. American Home Assurance Company v. City of Opa Locka, 368 So.2d 416 (Fla. 3d DCA 1979); Brown v. Financial Indemnity Company, 366 So.2d 1273 (Fla. 4th DCA 1979); Insurance Company of North America v. King, 340 So.2d 1175 (Fla. 4th DCA 1976); Canadian Universal Insurance Company v. Employers Surplus Lines Insurance Company, 325 So.2d 29 (Fla. 3d DCA 1976); Mims Crane Service, Inc. v. Insley Manufacturing Corp., 226 So.2d 836 (Fla. 2d DCA 1969); Morse Auto Rental, Inc. v. Dunes Enterprises, Inc., 198 So.2d 652 (Fla. 3d DCA 1967); Fontainebleau Hotel Corporation v. Postol, 142 So.2d 299 (Fla. 3d DCA 1962).
We approve the rationale of the trial court. Had the legislature wished to preclude the application of indemnity principles to cases of this nature, it could have done so when it enacted the statute. It did not, and we, accordingly, affirm.
Affirmed.
FERGUSON, Judge (specially concurring).
I specially concur only to address the dissent's analysis which is accurate as far as *934 it goes, but which I think, overlooks practical aspects of the problem. The dissent concludes that the Fund should not be liable for the defense of Mt. Sinai. The problem of who should bear that responsibility then arises.
In order for Mt. Sinai to be ultimately responsible for its defense it would have to forfeit its right to common law indemnity  something not bargained for in the agreement with the Fund. If Miller is held liable, then he would be required to pay for two defenses  his own and that of Mt. Sinai.
In order to limit his liability to $100,000 on any claim, Miller, as a health care provider, was only required to (1) pay the statutory fee for Fund membership, (2) pay the first $100,000 of the claim, and (3) provide an adequate defense for the Fund as to any lawsuit filed against him. § 768.54(2)(b), Fla. Stat. (1979). In order to now hold Miller liable for the cost of Mt. Sinai's defense, as well as his own, the dissent necessarily has to, again, read into the statute a nonexistent term, i.e., that a health care provider must provide an adequate defense for any other health care provider who is named a party defendant on the same claim if the liability of that other health care provider is determined to be only vicarious. That, to me, asks too much.
We are presented with a question which the controlling statute simply does not answer. The dissent focuses on the stated purpose of the statute for its conclusion that the Fund should not be liable. The trial court and the majority here have focused on the statutory requirements which a member health care provider has to satisfy in order to enjoy the benefits of limited liability. Either view may be correct. The legislature has obviously left a gap in the law which it will eventually have to fill.
DANIEL S. PEARSON, Judge, dissenting.
This case involves, or at least should involve, the construction of provisions of the Medical Malpractice Reform Act relating to the Patient's Compensation Fund. The majority's reliance on the proposition that an indemnitee is entitled to recover its reasonable attorneys' fees as a part of its damages is hardly a rationale for making the Fund, as opposed to Dr. Miller, liable for the payment of such fees.
The primary purpose for the establishment of the Fund as part of the Medical Malpractice Reform Act was to create a fund designed to compensate medical malpractice plaintiffs, not to set up an insurance fund with obligations to a health care provider. Mercy Hospital, Inc. v. Menendez, 371 So.2d 1077 (Fla. 3d DCA 1979). A health care provider can, however, limit his liability under Section 768.54(2)(b), Florida Statutes (1979), under the following circumstances:
"A health care provider shall not be liable for an amount in excess of $100,000 per claim ... if the health care provider has paid the fees required pursuant to subsection (3) for the year in which the incident occurred for which the claim is filed, and an adequate defense for the fund is provided, and pays at least the initial $100,000 or the maximum limit of the underlying coverage maintained by the health care provider." (emphasis supplied).
As the statute makes clear, the Fund's role is to cover large claims after the covered health care provider has defended the case at trial and has satisfied the first $100,000 of any adjudicated liability. It is the health care provider who is responsible to provide an adequate defense for the Fund, not the other way around. But the result reached by the trial court and the majority requires the Fund to pay the costs of Mt. Sinai's defense in direct contravention of the statute as I read it.
The fallacy in adjudicating the Fund liable for Mt. Sinai's costs of defense is more readily seen when one analyzes the rights and responsibilities of each of the parties vis-a-vis the other. As between the Fund and Mt. Sinai, Mt. Sinai is required by the statute to provide a defense against any claim of medical malpractice. As between the Fund and Miller, Miller is required by the statute to provide a defense against any *935 claim of medical malpractice. As between Mt. Sinai and Miller, Miller is required under principles of common law indemnity to provide a defense against any claim of medical malpractice arising from Miller's negligent treatment while acting as Mt. Sinai's agent. Nowhere in this calculus does the Fund become liable for the costs of defense.
I respectfully dissent and would reverse the judgment below insofar as it awarded Mt. Sinai costs and attorneys' fees against the Fund.